**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| BENJAMIN A. NISBET, | Case No. CV 09-356-C-REB |
| Petitioner, | |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Respondent. | |

Now pending before the Court is Benjamin Nisbet's Petition for Review (Docket No. 2),

seeking review of the Social Security Administration's final decision to deny his claim for

child's insurance benefits and supplemental security income benefits under Titles II and XVI of

the Social Security Act.  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully

reviewed the record and otherwise being fully advised, the Court enters the following

Memorandum Decision and Order:

## I.  PRELIMINARY MATTERS

This matter is before the Court upon a Petition for Review of the Commissioner of Social

Security's final decision on Petitioner's request for benefits.  Respondent challenges the

procedural method by which Petitioner's counsel submitted the issues to be decided by the

Court.  Specifically, Respondent argues that Petitioner should not be allowed to rely on both a

memorandum in support his Motion for Summary Judgment and a statement of facts.

**MEMORANDUM DECISION AND ORDER - 1**

Respondent's Mem., p. 5 (Docket No. 15). For purposes of this decision, the Court has

considered Petitioner's nineteen-page supporting memorandum as an opening brief and notes

that Respondent was not required in this administrative review case to file a statement of

disputed facts. The record in this case speaks for itself and the Court has considered that entire

record in light of the standards for judicial review in social security benefits cases.

Additionally, the Court notes that Petitioner filed for disability benefits shortly before his

eighteenth birthday; thus, he has both a childhood and an adult disability claim. Petitioner

submitted only four paragraphs of discussion about his childhood disability claim, noted that the

standards for childhood disability benefits are more stringent than those for adult benefits, and

requested that Petitioner's request be considered under the adult standards. Pet.'s Mem. on Mot.

Summ. Judgment, p. 18 (Docket No. 12-2). Because the Court has decided to remand this case

for the reasons set forth below, the ALJ will be required to consider how the medical evidence to

be considered impacts both Petitioner's claim for childhood benefits and his claim for adult

benefits.

## II. ADMINISTRATIVE PROCEEDINGS

Petitioner first applied for Social Security disability benefits on March 6, 2006, when he

was 17 years old. Petitioner turned 18 on September 27, 2006. AR 14. Petitioner's application

for benefits is based on alleged mental disability. IQ testing measured normal intelligence, but

during high school Petitioner was eligible for special learning services as a learning disabled

student. *See* AR 182-89; 244-410. Petitioner, his mother, psychologists, and school personnel

report depression, along with grief following the death of Petitioner's father.

**MEMORANDUM DECISION AND ORDER - 2**

Petitioner's disability benefits application was denied initially and, again, on reconsideration. AR 9. Petitioner made a timely request for a hearing before an Administrative Law Judge ("ALJ"). *Id.* On November 18, 2008, ALJ R. S. Chester held a hearing in Clarkston, Washington, at which time Petitioner, represented by attorney Paul L. Clark, appeared and testified. *Id. See also* AR 40-50. Also testifying at the hearing were Petitioner's mother, Marion Norton, vocational expert Tom Moreland, and Jay M. Toews, an impartial medical expert in psychology. AR 9, 30-39, 51-64.

On March 16, 2009, the ALJ determined that Petitioner's developmental disorder and depression/grief reaction pose more than minimal limitations on his ability to perform work-related activities. AR 22. The ALJ, however, issued a decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. AR 26. Petitioner timely requested review from the Appeals Council. The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely filed the instant action, arguing that the Commissioner's decision is not supported by substantial evidence and is in conflict with rules, regulations, and the law. Pet.'s Mem. on Mot. Summ. Judgment, p. 2 (Docket No. 12-2). Specifically, Petitioner asserts that (1) the ALJ's residual functional capacity finding is not consistent with the limitations assessed by an examining psychologist; (2) the ALJ did not express specific and legitimate reasons, supported by substantial evidence, for disregarding two examining psychologists' opinions; (3) the ALJ failed to properly evaluate Petitioner's credibility; (4) the ALJ failed to properly evaluate lay evidence; and (5) the ALJ

offered an incomplete hypothetical question to the vocational expert. *Id.* Petitioner requests that the Court reverse the ALJ's decision and order the payment of benefits or, alternatively, remand the case for proper consideration of the evidence.

### III. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## IV. DISCUSSION

### A. Sequential Processes

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act. Although Petitioner submits that steps 1 through 4 are not at issue in this case, the Court will describe the ALJ's findings and conclusions at each step in the process as background for the Court's decision. *See* Pet.'s Mem. on Mot. Summ. Judgment, p. 4 (Docket No. 12-2).

**MEMORANDUM DECISION AND ORDER - 5**

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner did not perform substantial gainful activity after his alleged disability onset date. AR 14.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the

ALJ found that before and after attaining the age of 18, Petitioner's pervasive developmental disorder and a major depressive disorder/grief reaction were severe impairments. AR 14, 22.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). Where, as here, the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. *See also* AR 15-23.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Petitioner has no past relevant work, but the ALJ must still assess his residual functional capacity, which is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945.

In the fifth and final step, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he/she is not disabled; if the claimant is not able to do other work and meets the duration requirement, he/she is disabled. Here, the ALJ found that Petitioner has the capacity to perform a full range of work at all exertional levels, but the work cannot involve more than 1 or 2 step routine or repetitive tasks, more than limited contact with

**MEMORANDUM DECISION AND ORDER - 7**

coworkers or the public, or production rate pace. AR 23. It is at this step that Petitioner claims

the ALJ erred in evaluating the evidence and explaining the rationale for his determinations.

**B.      The ALJ's Treatment of the Examining Psychologists' Opinions**

Petitioner challenges the ALJ's residual functional capacity assessment ("RFC"), arguing

it does not properly reflect the opinions of his examining psychologists. The ALJ assessed an

RFC allowing Petitioner to perform a full range of work at all exertional levels, but the work

cannot involve more than 1 or 2 step routine or repetitive tasks, more than limited contact with

coworkers or the public, or production rate pace. AR 23. Relatedly, the ALJ found that

Petitioner had "moderate difficulties in maintaining social functioning" and "mild difficulties in

maintaining concentration, persistence, or pace." AR 22. In making these findings, the ALJ

consistently noted that Petitioner's "alleged concentration deficits are contradicted by his

admission that he spends hours playing computer games and watching television and that he

enjoys playing board games." AR 23. *See also* AR 16-17, 19. The ALJ also pointed out that

Petitioner is able to contact others online. AR 17, 23-24. The ALJ accepted the opinions of the

nonexamining, testifying expert, Dr. Toews, including his opinion that Petitioner does not have

any marked limitations in any of the six domains of function (assessed for child disability

claims) as consistent with the substantial evidence in the case record. AR 17.

In his decision, the ALJ discussed the reports of examining health providers Tim

Rehnberg and James Phillips, AR 24-25. Nonetheless, Petitioner contends that the ALJ did not

provide specific and legitimate reasons, supported by substantial evidence in the record, for

**MEMORANDUM DECISION AND ORDER - 8**

rejecting the opinions of Dr. Rehnberg and Dr. Rebecca Alexander[1], both psychologists, and that

the ALJ's RFC is inconsistent with the limitations found by Dr. James Phillips, despite the ALJ's

decision relying on Dr. Phillips's report, *see* AR 24.

### 1. Legal Standards

"In order to discount the opinion of an examining physician in favor of the opinion of a

nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are

supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th

Cir. 1996) (emphasis in original). The opinion of a non-examining medical expert by itself

cannot be considered substantial evidence that supports the rejection of a treating or examining

physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). *See* 20 C.F.R. §§ 404.1527(d)(1),

416.927(d)(1) (providing that more weight generally is given to examining sources than

nonexamining sources); Soc. Sec. Ruling ("SSR") 96-6p, 1996 WL 374180, at *2, *4 (ALJ must

consider factors such as consistency with other medical opinions in deciding what weight to

accord RFC assessment by state-agency consultants, which is treated as medical opinion from

nonexamining source).

### 2. Analysis

Dr. Alexander reported that Petitioner's ability "to understand and remember complex

instructions and sustain concentration and persist is moderate to markedly impaired," and that

Petitioner's ability "to interact appropriately in the workplace/school, adapt to change,

understand social mores/abstractions, and respond to peer banter is markedly impaired." AR

---

[1] Dr. Alexander performed a psychological evaluation of Petitioner pursuant to a request by the Social Security Disability Determinations Services. AR 466.

471. Although the ALJ cited to Exhibit 6F (the exhibit containing Dr. Alexander's report) as support for two factual statements, *see* AR 20, 23, the ALJ did not summarize Dr. Alexander's opinions, let alone explain what, if any, weight he afforded her opinions. Social Security Ruling 96-6p requires an ALJ to explain in a decision the weight given to a state agency consulting medical expert's opinions. *See* Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 at *1, ("Findings . . . made by State agency medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence . . .). ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions." *Id. See also Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

The failure to discuss and consider Dr. Alexander's opinions is reversible error. *See, e.g., Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, at1056 (9th Cir. 2006) (reversing where ALJ to failed to provide any reasons for rejecting the evidence at issue); *Higgins v. Astrue*, No. 1:09-cv-0709 GSA, 2010 WL 2302375, *11 (E.D. Cal. June 7, 2010) (finding ALJ's decision to accord significant weight to a non-examining physician's physician's opinion, and to reject an examining physician's opinion, insufficient where ALJ did not explain why). "The opinion of an examining doctor, even if contradicted by the opinion of another [nonexamining] doctor, can only be rejected for specific and legitimate reasons that are supported by the record." *Lester v. Chater,* 81 F.3d 821, 831 (9th Cir. 1995) (as amended). *See also Nguyen v. Chater*, 100

MEMORANDUM DECISION AND ORDER - 10

F.3d 1462, 1464 (9th Cir. 1996) (holding that the ALJ erred because he neither explicitly rejected an examining physician's opinion, nor set forth specific, legitimate reasons for crediting a non-examining physician's opinion).

Respondent argues this amounts to harmless error; however, the Ninth Circuit has "consistently reversed the Commissioner's decisions for failure to comment on . . . competent testimony." *Stout*, 454 F.3d at1056 (citing several cases as examples). In cases where the Ninth Circuit has applied a harmless error analysis, the ALJ's error "was inconsequential to the ultimate nondisability determination." *Id.* at 1055. The Ninth Circuit explained in 2006 that not one of its harmless error social security decisions to date had concluded that "an ALJ's silent disregard of lay testimony about how an impairment limits a claimant's ability to work was harmless." *Id.* at 1055-56. The Ninth Circuit's discussion of lay testimony applies with equal force to silent disregard of expert testimony. Simply put, this Court will not treat the ALJ's silent disregard of an examining physician's testimony as harmless on this record because "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056. The Court cannot do so here.

Although Respondent argues that the ALJ would reject Dr. Alexander's opinions or find them consistent with his assessed RFC for the same reasons he provided with regard to the opinions of Drs. Rehnberg and Phillips, the Court will not speculate as to the ALJ's findings or the basis of his unexplained conclusions or absent observations. *See Lewin v. Schweiker*, 654 F.2d 631, 634-35 (9th Cir. 1981). This lack of explanation is of particular concern here, where all three examining psychologists have assessed moderate to marked impairments in Petitioner's

**MEMORANDUM DECISION AND ORDER - 11**

social functioning and ability to sustain concentration, *see* AR 471, 519-22, 531-32, and a Moscow High Teacher/Counselor who had almost daily contact with Petitioner reported that he "needs constant support to stay on task," and "if left to work independently," he will "rarely complete an activity on his own," AR 182-84.

As noted, the ALJ found that Petitioner had "moderate difficulties in maintaining social functioning" and "mild difficulties in maintaining concentration, persistence, or pace," AR 22, whereas Dr. Alexander reported that Petitioner's ability "to understand and remember complex instructions and sustain concentration and persist is moderate to markedly impaired," and that Petitioner's ability "to interact appropriately in the workplace/school, adapt to change, understand social mores/abstractions, and respond to peer banter is markedly impaired." AR 471. Given Dr. Alexander's findings of moderate to marked impairment in areas related to social interactions with peers, etc., and moderate to marked impairment of concentration, it is not clear whether the ALJ considered her findings at all, especially when he wrote in his opinion that "there is *no evidence* to establish that the claimant's mental disorders resulted in marked restriction of daily living, marked difficulties in maintaining social functioning; [or] marked difficulties in maintaining concentration, persistence, or pace" to meet or medically equal a listed impairment before attaining age 18. AR 15 (emphasis added). Likewise, the ALJ found that after Petitioner attained age 18, his mental disorders "have not resulted in marked restriction of activities of daily living; marked difficulties in maintaining social functioning; [or] marked difficulties in maintaining concentration, persistence, or pace." AR 23.

Moreover, at the hearing the vocational expert testified[2] that it would be difficult to find

any work for a person with marked limitations in his abilities to maintain attention and

concentration, perform activities of a schedule, maintain attendance, and sustain an ordinary

routine without special supervision.  AR 65; *see also* AR 486, 519-20.  The vocational expert

went on to explain that even if these abilities were assessed at a moderate level "it would be

difficult to find sustained work."  AR 65.

The vocational expert's testimony also poses a problem in regard to the ALJ's

consideration of Dr. Phillips's assessments as to Petitioner's abilities to interact appropriately

with the public and respond to unusual work situations and change in a routine work setting.  Dr.

Phillips concluded Petitioner's abilities in those areas were markedly impaired.  AR 24.  The

ALJ noted that the RFC he assessed reflected Dr. Phillips's assessed limitations.  However,  Dr.

Phillips noted "concentration and memory problems" and found marked limitations in

Petitioner's ability to respond appropriately to usual work situations and changes in a routine

work setting, interact appropriately with the public, and make judgments and complex work

decisions.  Dr. Phillips also described moderate limitations in Petitioner's ability to interact

appropriately with supervisors and coworkers and to understand, remember, and carry out

complex instructions.  AR 531-32.

As Petitioner notes, the Social Security Administration has explained:

> The basic mental demands of competitive, remunerative, unskilled
> work include the abilities (on a sustained basis) to understand,
> carry out, and remember simple instructions; to respond

---

[2] This testimony was provided in response the a request by Petitioner's attorney that the vocational expert review Dr. Rehnberg's assessments and consider the effect of those limitations on an individual's ability to perform the jobs the vocational expert identified a person with the RFC of Petitioner could do.  *See* AR 64, 519-24.

**MEMORANDUM DECISION AND ORDER - 13**

appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85-15, 1985 WL 56857. Considering the authority discussed above, the record as a whole, and because the ALJ's RFC assessment does not adequately account for (or, with respect to Dr. Alexander even discuss) the examining physicians' opinions, this case must be remanded for reconsideration. As part of that reconsideration, the ALJ should consider Dr. Rehnberg's assessed limitations[3], to the extent they support or can be differentiated from the opinions of Drs. Alexander and Phillips, and explain his considerations as they relate to his findings of an RFC for Petitioner. *See* Soc. Sec. Ruling ("SSR") 96-6p, 1996 WL 374180, at *2, *4 (ALJ must consider factors such as consistency with other medical opinions in deciding what weight to accord RFC assessment by state-agency consultants, which is treated as medical opinion from nonexamining source).

## C.     Petitioner's Remaining Arguments

Petitioner asserts several other objections to the ALJ's decision. First, Petitioner disputes the ALJ's assessment of his credibility. Because the ALJ's credibility determination was based,

---

[3] The ALJ discussed Dr. Rehnberg's opinions in relation to Petitioner's RFC, but "determined that the level of functional limitation assessed by Dr. Rehnberg is not supported by substantial evidence in the claimant's case record." AR 24. Dr. Rehnberg determined that Petitioner had marked limitations in the ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance, to sustain ordinary routine without special supervision, to interact appropriately with the general public, and to respond appropriately to changes in the work setting. AR 24. As these opinions are similar to those of Dr. Alexander, the ALJ should consider whether his treatment of Dr. Rehnberg's opinions remains the same on reconsideration.

in part, on his analysis of the medical evidence, which the Court finds improper as explained above, the ALJ must reassess Petitioner's credibility after he has reconsidered the medical evidence.[4]

Petitioner also asserts that the ALJ did not properly account for lay testimony in his findings. Pet.'s Mem. at 15-16. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Petitioner correctly asserts that the weight assigned to a Teacher Questionnaire form went unaddressed by the ALJ, *see* Pet.'s Mem. at 16-17. However, the ALJ was aware of this form and it was discussed during the hearing. AR. 37-39, 66. To the extent the report provides information useful to the ALJ's reconsideration of the examining physicians' opinions, the ALJ should consider it on remand.

The Court will not consider Petitioner's arguments related to why excessive focus on playing video games is a symptom of Petitioner's impairment because there is no indication in the record that the sources he cites were part of the record before the ALJ. *See* Pet.'s Mot. on Summ. Judgment, pp. 9-10 (Docket No. 12-2). On remand, however, the ALJ may choose to consider whether playing video games is an activity transferable to the workplace and/or if Petitioner's focus on that activity relates to any symptoms of his mental disorder or other alleged impairments.

---

[4] In making the credibility determination, the ALJ stated he considered the evidence of record, and he discussed medical evidence such as Dr. Toews' opinions. AR 16-17.

**MEMORANDUM DECISION AND ORDER - 15**

Finally, the Court will not address Petitioner's arguments related to the hypothetical posed by the ALJ to the vocational examiner because, of necessity, when the ALJ reconsiders the medical evidence related to his RFC determination, he will determine whether any other limitations should be included in the hypothetical.

## V. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

However, the ALJ did not provide comment on Dr. Alexander's opinions or explain whether or why he did not consider her assessment of the Petitioner in his decision. Additionally, his RFC did not adequately account for the limitations assessed by Dr. Phillips. Because of the ALJ's silent disregard of Dr. Alexander's opinions and because of the significance of such opinions in relation to the evidence from other providers, the Court cannot find substantial evidence to support the ALJ's decision on this record. Therefore, the case is remanded for further consideration by the ALJ.

This is not to say that this Court conclusively finds Petitioner to be either disabled or not disabled. Relatedly, it is not for this Court to resolve the question of Petitioner's credibility or whether and how Dr. Alexander's opinions may factor into the ALJ's disability determination. Rather, the Court is tasked with reviewing the basis of the ALJ's decision on that issue, highlighting those areas that may call into question the decisions reached by the ALJ, and, in

doing so, should not be misunderstood as substituting its own judgment for that of the ALJ's. Here, the ALJ's work failed to properly consider Dr. Alexander's opinions or fully account for limitations assessed by Dr. Phillips. Accordingly, the ALJ's decision is not supported by substantial evidence. The action is therefore remanded to allow the ALJ to revisit the medical opinions and, in turn, determine their effect, if any, on the other issues raised by Petitioner and on Petitioner's ultimate disability determination.

## VI.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED.  This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED: **September 29, 2010.**

Honorable Ronald E. Bush
U. S. Magistrate Judge